SCHNEIDER, vs. THE PROVIDENT LIFE INSURANCE
COMPANY.

*Insurance against accident. — Negligence. — Wanton Exposure.*

1. The fact that a person insured against injury or death by accident was guilty of negligence which contributed to an injury received by him, will not prevent a recovery on the policy.
2. A provision in the policy, that the company should not be liable for an injury happening to the assured by reason of his "willfully and wantonly exposing himself to any unnecessary danger or peril," *held* not to prevent a recovery, where he received the injury in consequence of getting from the platform at a railroad depot upon the cars while in motion at a rate of speed less than that of a man walking.

APPEAL from the Circuit Court for *Dane* County.

Action upon a policy of insurance against personal injury arising from accident and causing death. The plaintiff appealed from a judgment of nonsuit, the grounds of which will appear from the opinion.

*Alden S. Sanborn* (with *S. U. Pinney*, of counsel), for the appellant.

*Palmer, Hooker & Pitkin*, for respondent, to the point that the injury was not caused by *accident*, cited Jones

on Bailments, 8; *Theobald v. Railway Passengers' Assurance Co.*, 26 Eng. Law & Eq. 432. 2. To the point that (apart from the express condition of the policy) the recovery must be defeated by *gross* negligence of the deceased, they cited Phillips on Insurance, §§ 41, 1051; *Chandler v. Worcester Mut. Fire Ins. Co.*, 3 Cush. 328; *Cudworth v. S. C. Ins. Co.*, 4 Rich. 416; Angell on Fire and Life Ins., §§ 126–128; Angell on Carriers, §§ 10, 22; 9 Wis. 202. 3. Counsel contended that defendant was relieved from liability by the express provision of the policy, because the assured had wantonly and willfully exposed himself to unnecessary danger.

PAINE, J. This action was upon a policy by which Bruno Schneider was insured against injury or death by accident. He attempted to get on a train of cars while in slow motion, and fell under them and was killed. The policy contained a clause that the company should not be liable for any injury happening to the assured by reason of his "*willfully and wantonly* exposing himself to any unnecessary danger or peril." And, on the trial, the plaintiff was nonsuited, upon the ground that the death was within this exception.

But the position most strongly urged by the respondent's counsel in this court was, that, inasmuch as the negligence of the deceased contributed to produce the injury, therefore the death was not occasioned by an accident at all, within the meaning of the policy. I cannot assent to this proposition. It would establish a limitation to the meaning of the word "accident" which has never been established, either in law or common understanding. A very large proportion of those events which are universally called accidents, happen through some carelessness of the party injured, which contributes to produce them. Thus, men are injured by the careless use of fire-arms, of explosive substances, of machinery, the careless management of horses, and in a thousand

ways, where it can readily be seen afterward that a little greater care on their part would have prevented it. Yet such injuries, having been unexpected, and not caused intentionally or by design, are always called accidents, and properly so. Nothing is more common than items in the newspapers under the heading, "accidents through carelessness."

There is nothing in the definition of the word that excludes the negligence of the injured party as one of the elements contributing to produce the result. An accident is defined as "an event that takes place without one's foresight or expectation an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and, therefore, not expected."

An accident may happen from an unknown cause. But it is not essential that the cause should be unknown. It may be an unusual result of a known cause, and, therefore, unexpected to the party. And such was the case here, conceding that the negligence of the deceased was the cause of the accident.

It is true that accidents often happen from such kinds of negligence. But, still, it is equally true that they are not the usual result. If they were, people would cease to be guilty of such negligence. But cases in which accidents occur are very rare in comparison with the number in which there is the same negligence without any accident. A man draws his loaded gun toward him by the muzzle—the servant fills the lighted lamp with kerosene—a hundred times without injury. The next time the gun is discharged, and the lamp explodes. The result was unusual, and therefore as unexpected as it had been in all the previous instances. So there are, undoubtedly, thousands of persons who get on and off from cars in motion without accident, where one is injured. And, therefore, when an injury occurs, it is an unusual result, and unexpected, and strictly an accident. There are not many authorities on the point. The

respondent's counsel cites *Theobald v. The Railway Passengers' Assurance Co.*, 26 Eng. Law & Eq. 432, not as a direct authority, but as containing an implication that the negligence of the injured party would prevent a recovery. I do not think it can be construed as conveying any such intimation. The insurance there was against a particular kind of accident—that was a railway accident; and the only question was, whether the injury was occasioned by an accident of that kind. The court held that it was; and although it mentions the fact that there was no negligence on the part of the assured, that cannot be considered as any intimation what would have been the effect of negligence, if it had existed.

The general question as to what constitutes an accident, was considered in two subsequent cases in England. The first was *Sinclair v. The Maritime Passengers' Assurance Co.*, 107 E. C. L. 478, in which the question was, whether a sun-stroke was an accident within the meaning of the policy. The court held that it was not, but was rather to be classed among diseases occasioned by natural causes, like exposure to malaria, etc. ; and, while admitting the difficulty of giving a definition to the term "accident" which would be of universal application, they say they may safely assume "that some violence, casualty or *vis major* is necessarily involved." There could be no question in this case, of course, but that all these were involved.

In the subsequent case of *Trew v. Railway Passengers' Assurance Co.*, 6 Hurl. & Nor. 839, the question was, whether a death by drowning was accidental. The counsel relied on the language of the former case, and urged that there was no external force or violence. But the court held, that, if the death was occasioned by drowning, it was accidental, within the meaning of the policy. And, in answer to the argument of counsel, they said : "If a man fell from a housetop, or overboard from a ship, and was killed ; or, if a man was suffocated by

the smoke of a house on fire, such cases would be excluded from the policy, and the effect would be, that policies of this kind, in many cases where death resulted from accident, would afford no protection whatever to the assured. We ought not to give to these policies a construction which will defeat the protection of the assured in a large class of cases."

There was no suggestion that there was any question to be made as to the negligence of the deceased ; and yet the court said : "We think it ought to be submitted to the jury to say whether the deceased died from the action of the water or natural causes. If they are of the opinion that he died from the action of the water, causing asphyxia, that is a death from external violence, within the meaning of this policy, *whether he swam to a distance and had not strength enough to regain the shore, or, on going into the water got out of his depth.*

Now, either of these facts would seem to raise as strong an inference of negligence, as an attempt to get upon cars in slow motion. Yet the court said, that, although the drowning was occasioned by either one of them, it would have been an accidental death within the meaning of the policy, and the plaintiffs entitled to recover. I cannot conceive that it would have made such a remark, except upon the assumption that the question, whether the injured party was guilty of negligence contributing to the accident, does not arise at all in this class of cases. I think that is the true conclusion, both upon principle and authority, so far as there is any upon the subject ; and the only questions are, first, whether the death or injury was occasioned by an accident within the general meaning of the policy, and, if so, whether it was within any of the exceptions.

This conclusion is also very strongly supported by that provision of the policy under which the plaintiff was nonsuited. That necessarily implies that any degree of negligence, falling short of "willful and wanton expo

sure to unnecessary danger," would not prevent a recovery. Such a provision would be entirely superfluous and unmeaning, in such a contract, if the observance of due care and skill on the part of the assured constituted an element to his right of action, as it does in actions for injuries occasioned by the negligence of the defendant.

The question, therefore, remains, whether the attempt of the deceased to get upon the train was within this provision, and constituted a "willful and wanton exposure of himself to unnecessary danger." I cannot think so. The evidence showed that the train, having once been to the platform, had backed so that the cars stood at some little distance from it. While it was waiting there, the deceased was walking back and forth on the platform. It is very probable that he expected the train to stop there again before finally leaving. But it did not. It came along, and, while moving at a slow rate, not so fast as a man would walk, he attempted to get on, and, by some means, fell either under or by the side of the cars, and was crushed to death. The act may have been imprudent. It may have been such negligence as would have prevented a recovery in an action based upon the negligence of the company, if there had been any. But it does not seem to have contained those elements which could be justly characterized as willful or wanton. The deceased was in the regular prosecution of his business. He desired and expected to leave on that train. Finding that he would be left, unless he got on while it was in motion, it was natural enough for him to make the attempt. The strong disinclination which people have to being left, would impel him to do so. The railroad employees were getting on at about the same time. Imprudent though it is, it is a common practice for others to get on and off in the same manner. He had undoubtedly seen it done, if he had not done it himself, many times, without injury. I cannot regard it, therefore, as a willful and wanton exposure

of himself to unnecessary danger, within the meaning of the policy.

*By the Court.*— The judgment is reversed, and a *venire de novo* awarded.