THOMAS PHELAN, Defendant in Error, v. THE TRAVELERS' INSURANCE COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, January 6, 1890.

1. **Insurance :** ACCIDENT POLICY : INJURY BY ACCIDENTAL MEANS : ASSAULT. The terms "accidental means" in the condition of an accident insurance policy apply to the conduct of the insured as distinguished from the conduct of the party doing the injury, and where the finding is that the insured was not expecting an assault and did not voluntarily bring it on, nor induce it, the resulting injury, though intentionally inflicted by the assailant, was an accident within the meaning of the policy.

2. ———: ———: INTENTIONAL INJURIES BY ANOTHER : ATTEMPTED ASSASSINATION. Where the evidence leads to the conclusion that the injury is the result of a concerted arrangement to assassinate the insured, the case falls within that condition of the policy that the insurer will not be liable where the injury is occasioned "by intentional injuries inflicted by the insured or any other person."

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED.

*Warner, Dean & Hagerman,* for the plaintiff in error.

(1) The contract sued on provides in express terms that no claim shall be made under it when the death or injury may have been caused by duelling or fighting, or by intentional injuries inflicted by the insured or any other person, or by voluntary exposure to unnecessary danger. (2) The contract declared on is one which furnishes indemnity against accidents only. This is expressly stated. For a small payment in money, any person, young or old, in feeble health or in good health, is furnished security against accidental injuries. For injuries which are not accidental it makes no provision. *Ins. Co. v. McConkey,* 127 U. S. S. C., p. 661 ; *Hutchcraft, Ex., v. Ins. Co.,* 8 S. W. Rep. 570. We have before us a certified copy of an opinion by Judge THAYER, while sitting as circuit judge in St. Louis, before whom the same question came in the case of *Schreck v. Ins. Co.,* which was determined February 17, 1887, and which says : "The court is very clearly of the opinion that the plea states a good defense to the action. It avers, in substance, that the injuries sustained by the plaintiff, and on account of which he claims indemnity, were intentionally inflicted by one John E. Webb, who wilfully assaulted the plaintiff with a knife or other sharp instrument, thereby wounding him and disabling him from attending to his ordinary business," etc.

*Peak, Yeager & Ball,* for the defendant in error.

(1) It is clear from the evidence that the defendant in error did not anticipate or expect the assault which resulted in the bodily injury complained of, and it is equally clear that he did nothing to provoke or invite the assault. Inasmuch, therefore, as the defendant in error had no agency in producing or effecting the

injuries, although they were intentionally inflicted by Richard Short, it must follow that the injuries, in so far as the defendant in error is concerned, were accidental. *Hutchcraft's Ex'r v. Ins. Co.*, 8 S. W. Rep., pages 570 and 571. (2) The second defense set up is that the plaintiff in error is not liable if the injuries complained of were intentional injuries inflicted by the insured or any other person. The cases of *Hutchcraft's Ex'r v. Ins. Co., supra*, and *Ins. Co. v. McConkey*, 127 U. S. 661, while they are of persuasive authority, do not bind, the point being new in this state, and we ask the court to construe the contract of insurance in this case, in accordance with reason and justice, giving to the above cases only such weight, as their logic and reason entitle them to receive

ELLISON, J.—This action is based on what is known as an accident insurance policy containing the following provisions or conditions, viz.:

"The Travelers' Insurance Company, of Hartford, Connecticut, will indemnify the person insured by this ticket in the sum of fifteen dollars per week against loss of time, not exceeding twenty-six consecutive weeks from the happening of such accident and injury, as shall, independently of all other causes, confine him to the house, and immediately and wholly disable and prevent him from the prosecution of any and every kind of business by reason of bodily injuries effected during the term of this insurance, through external, violent and accidental means; or, in the event of death occasioned by bodily injuries received as aforesaid, when resulting within ninety days from the happening thereof, and in such event only, will pay the sum of three thousand dollars to the legal representatives of the insured, within ninety days after proof of such accident and injury.

"Provided, always, that this insurance shall not extend to any bodily injury of which there shall be no

external and visible sign upon the body of the insured; nor to disappearances; nor to any bodily injury happening directly or indirectly in consequence of fits, vertigo, somnambulism or disease in any form; nor to any death or disability which may have been caused wholly, in part or jointly, by hernia, bodily infirmities or disease existing prior or subsequent to the date of this contract; nor by the taking of poison, contact with poisonous substances, or inhaling gas, or by any surgical operation, or medical treatment; nor to any case except where the injury is the approximate and sole cause of the disability or death. And no claim shall be made under this ticket when the death or injury may have been caused by duelling, fighting, wrestling, lifting or overexertion, or by suicide (felonious or otherwise, sane or insane), or by intentional injuries inflicted by the insured or any other person."

The facts, as disclosed by the record in the cause, are substantially as follows: Plaintiff was acquainted with a number of the members of what he calls the "dynamite party." He was accused by some of these of having had an "interview" which was published in the Kansas City Journal, a newspaper published in Kansas City, Missouri, in which he disclosed, as charged by members of that party, some of the secrets of the organization. He was written to from New York City by one O'Donovan Rossa and asked to explain the interview.

He proceeded to New York, and on his way thither, while passing through Chicago, took out the policy here sued upon. On arriving in New York he immediately hunted up a man with whom he seems to have had some acquaintance and with whom he had also had correspondence in relation to the interview. In company with this acquaintance he proceeded, at about three o'clock p. m., to the office of O'Donovan Rossa. When he went in, as he testifies, "there was three persons

sitting inside. It is a small place about seven by nine, and there was a small table in the center of the room. They fixed a chair for me close to the door, with the table to my right and in front. One sat to my right, another at the furthest end of the table, and one on the opposite side.

"And we were speaking on the usual topic between men when they have not seen each other for some time, as to when I arrived in town, and so on. I was scarcely there five minutes when this man Short came in and says: 'Now, I have got you; now, I have got you.' And he had a knife raised to make a lick at my breast and I tried to ward it off, and he struck my left arm and broke the arm in two. That was the manner of the attack."

"Q. Now, Captain, at that time, when this man came in there, were you quarreling, or anything of the kind? A. There was not an angry word passed, sir. They were shaking hands with me in the room. Mr. O'Brien asked me when I came in, and I told him, 'about an hour ago;' and he went to the door and nodded his head, and this man Short rushed in."

"Q. Were you expecting any difficulty? A. No; nothing in the world. If I was, I would have gone prepared differently from what I was."

"Q. Was the attack unexpected? A. Wholly so; I had no idea of it."

"Q. What was the nature and extent of the injuries you received? A. I received eight stabs and three cuts. One of the stabs broke my left arm in two; the others in my breast and back; two stabs in the right arm, severing the muscles and ligaments, and I have attacks of acute pain in my neck and arms. It has finally left me a wreck in cold weather. This weather affects me terribly."

It is for these injuries, received in this attempted assassination, that plaintiff claims to have been disabled

for eleven weeks, and seeks to recover by reason thereof on the policy sued upon. He obtained judgment in the trial court, and the defendant appeals.

There is no dispute here but that the injuries were inflicted upon plaintiff within the life of the policy, and that, in consequence, he was prostrated for a period of eleven weeks. The defendant is unquestionably liable unless it escapes by reason of two of the conditions of the contract of insurance, or by either of such conditions. The first of these conditions is, that the injury shall happen "through external, violent and accidental means." The second is, that when the injury is occasioned "by intentional injuries inflicted by the insured or *any other person.*"

As to the first point, there is no doubt here but that the injury to plaintiff was from external and violent means, and the only question is, was it accidental? An accident, as commonly understood, is an occurrence which is not intended ; and therefore a thing which is done intentionally is not done accidentally. But as to the condition of the policy now under consideration, we must restrict the words, accident and intentionally as they will apply to the conduct of the insured as distinguished from the conduct of the party doing the injury. The evidence is contradictory as to what were the expectations and intentions of the plaintiff in going to New York and into O'Donovan Rossa's office. There is testimony tending to show that he was not expecting to be assaulted, yet he went there armed with a revolver which he used in his defense. As the finding, however, was for plaintiff we will assume the fact to have been found that he was not expecting an assault, and that he did not voluntarily bring about such assault, or place himself in such position as to induce it; and, therefore, we are of the opinion that as to the plaintiff, the injury, though intentionally inflicted by his assailant, was an accident within the meaning of the policy, and

for which, but for the second condition above quoted, defendant would be liable: *Hutchcraft v. Travelers' Ins. Co.*, 8 S. W. Rep. (Ky.) 570.

The foregoing considerations will not avail plaintiff as to the second condition. His case falls clearly within the letter of that condition. The injuries were intentionally inflicted by another person. The evidence leads to the conclusion that he, by concerted arrangement, was to be assassinated. In a short time after he had entered Rossa's room, without evidencing anything other than a friendly feeling for those he found there, and while extending greetings to them, a signal was given, whereupon the assassin entered and begun his assault with a knife, exclaiming, "Now I've got you." The injury then, was inflicted by another person, and we must hold, under the plain terms of the policy which there is no reason for not enforcing, that there can be no recovery. Such was the view taken by the supreme court of the United States in construing an identical condition with the one here set up. *Travelers' Insurance Co. v. McConkey*, 127 U. S. 661; *Hutchcraft v. Ins. Co., supra.*

With the concurrence of the other judges the judgment will be reversed.