LOVELACE v. TRAVELERS' PROTECTIVE ASSOCIATION OF AMERICA, *Appellant.*

Division One, December 22, 1894.

1. **Life Insurance:** ACCIDENT POLICY. The insured, in a policy against death "by accident," was shot and killed while attempting to put another out of the office of a hotel at which the former was a guest; *held,* that, in the circumstances stated in the opinion, his death was "an accident," within the meaning of the policy.

2. **Contract, Construction of.** Contracts should be interpreted so as to give effect to the intention of the parties; and, in case of any doubt, that intent is to be construed as the reasonable and natural one imported by the language they have used.

3. ———. Words of a contract should be given their usual and popular meaning, when there is no indication of a different purpose in their use.

4. **Insurance:** ACCIDENT POLICY: NEGLIGENCE OF INSURED. Gross negligence of the insured will not defeat recovery upon a fire policy, unless the latter so declares; and the same principle applies to such an accident policy as is considered in this case.

5. ———: "ACCIDENT." The meaning of the word "accident" discussed.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

Action upon a benefit certificate issued by the defendant. From a judgment for plaintiff, defendant appealed.

The contract sued upon is contained in the certificate, and certain parts of the constitution of the defendant, as follows:

### THE CERTIFICATE.

"The Travelers' Protective Association of America. This is to certify that Chas. Harris Lovelace, of Jackson, Miss., is an accepted member of the Mississippi Division of the Travelers' Association of America. That he is subject to all its requirements and entitled to all its rights, privileges and benefits. Benefits in case of death payable to Mrs. Margaret D. Lovelace, his mother.

"In Witness Whereof, the Association has caused this certificate to be signed by its President and Secre-

tary under the seal of the Association, at St. Louis, Mo., this 25th day of March, 1892.

[Seal]                    "GEO. S. McGREW, Pres't.
                          "LOUIS T. LaBEAUME, Sec'y."

FROM THE CONSTITUTION.

*"Article IX.—Benefit Fund.*

"Section 1.   This fund shall be established and maintained out of the annual dues as prescribed in section 1 of article 6, and every member of the Travelers' Protective Association in good standing shall be entitled to the following benefits upon satisfactory proof being presented to the national board of directors."

"Sec. 2.   Four thousand dollars shall be paid to the heirs of any deceased member, in case of death by accident.   Two thousand, five hundred dollars in case of the loss of both arms or both legs; one thousand, five hundred dollars in case of loss of one hand and one foot; two thousand, five hundred dollars in case of loss of one arm and one leg; one thousand dollars in case of loss of one hand or one foot; one thousand dollars in case of loss of one eye; four thousand dollars for loss of both eyes, provided such death or loss shall occur within three calendar months after the accident which caused it."

"Sec. 3.   Any member who may be disabled by accident in such manner as to be unable to attend to business, shall be entitled to draw the sum of $25 per week from the association for a term not exceeding fifty-two weeks."

"Sec. 4.   Every member of this association shall be entitled, in case of his death from natural causes, to one hundred dollars, providing that he has been a member in good standing for two consecutive years prior to his

death, which sum shall be paid to his beneficiaries upon satisfactory proof being furnished to this association."

The other material facts are stated in the opinion.

*Henry T. Kent* for appellant.

It is not an accidental killing, such as to make the defendant liable, where the death was the result of a rencounter, or where the party killed was the voluntary agent in bringing on the difficulty resulting in his death, or placed himself in such a position as to induce it. *Hutchcraft's Executor v. Travelers Insurance Co.*, 87 Ky. 300; *Supreme Council v. Garrigus*, 104 Ind. 133; *Phelen v. Travelers' Ins. Co.*, 38 Mo. App. 640.

*Valle Reyburn* for respondent.

(1) In construing the benefit certificate issued by defendant, and in interpreting its constitution and by-laws applicable thereto, a liberal construction favorable to the plaintiff should be adopted. Bacon on Benevolent Societies, par. 178; Cook on Life Insurance, sec. 18, p. 20; Niblack on Mutual Benefit Societies, pars. 172, 172a; *Healy v. Association*, 133 Ill. 556; *Utter v. Ins. Co.*, 65 Mich. 545; *Paul v. Travelers'*, *etc.*, *Co.*, 112 N. Y. 472. (2) The death of Lovelace at the hands of Graves was a death by accident, and not from natural causes in contemplation of law and within the language and significance of the membership certificate as defined by the provisions of defendant's constitution. Cook on Life Insurance, secs. 49, 50 and 51; *Supreme Council v. Garrigus*, 104 Ind. 133; *Accident, etc., Co. v. Bennett*, 90 Tenn. 256; *Richards v. Travelers', etc., Co.*, 89 Cal. 170; *Hutchcraft's Ex'r v. Travelers', etc., Co.*, 87 Ky. 300; *Rippey v. Association*, 2 Bigelow, Life & Accident Reports, 739; May on Insurance [3 Ed.], sec. 520.

BARCLAY, J.—This is an action upon a benefit certificate, in the nature of an insurance policy, issued to Charles H. Lovelace by the Travelers' Protective Association of America, the defendant, a benevolent association, incorporated under the laws of Missouri.

The pleadings need not be recited. No point is raised touching the formal presentation of the case.

Counsel for both parties, with commendable frankness and brevity, have put the material facts into compact form to facilitate the solution of the controversy.

It was submitted to the trial judge, without a jury, upon an agreed statement and depositions. The only question now urged is a question of law.

Mr. Lovelace was a member in good standing in the defendant association, when he met with his death, August 8, 1892.

The plaintiff is his mother, the beneficiary in his membership certificate.

The contract of insurance is contained in the certificate and in parts of the constitution of the association, which, counsel mutually agree, control the issue of the litigation.

In the statement, introducing the report of the case, copies of these documents are given.

No point is raised touching proofs of loss, notice, or any formal matter.

The defendant meets the case broadly, on its merits.

The decisive question before us is, was the death of the assured an "accident," within the true meaning of the contract of insurance. The question was presented by an instruction that, under the evidence, plaintiff was not entitled to recover; which the trial court refused to give. On the contrary, the court

found for the plaintiff, and gave judgment accordingly for $4,119.30 (which included some interest).

Defendant then appealed, after the usual preliminaries.

The following facts show the circumstances of the death of Mr. Lovelace:

He was a commercial traveler. On the fifth day of August, 1892, he came as a guest to the hotel in Hazelhurst, Mississippi. He was a friend of the proprietor, and spoke to some member of the latter's family on the porch of the hotel before entering the office. Another man named Graves was in the office of the hotel, making more or less noise, and cursing at times, when Lovelace arrived, about half past 11 o'clock at night.

The only witness besides Graves who saw the killing was one Scott. From his testimony it seems that that night the proprietor, Mr. Brown, was sick, and there was no one in charge of the office.

Scott was putting in the chairs from the porch when Lovelace walked in and said: "Who has got charge of the office to-night?" Scott answered, no one, and that he was going to bed. Lovelace then said: "It looks like somebody ought to be about it." And Lovelace then turned to Graves and said: "Look here, young man, you have got to get out of here, drinking and cursing that way;" and Graves replied, "What have you got to do with it?" Lovelace answered, "I am a guest at the hotel, and I think a heap of the family; and I think, in the absence of Mr. Brown, it is sorter my duty to see after things." Graves said, "You had better put me out;" Lovelace replied, "I will do it in a pair of minutes." And Graves said, with an oath, "he would like to see him (Lovelace), put him out." Lovelace said, "I will do that —— quick." Scott then walked between them and separated them.

Lovelace started upstairs, but it seems that he turned again and went back to the register. Lovelace then said, with an oath, "Don't you shake your hand in my face." (Graves had made a gesture which Lovelace interpreted as he stated). They were then a few feet apart. Graves replied, "You put me out! You have not got any more to do with this than I have." Lovelace then declared he would slap Graves, and applied an opprobrious epithet to him. Lovelace then slapped and pushed Graves back until the latter struck the wall, or door which was closed; and whilst they were thus together, Graves drew a pistol from his pocket, and shot Lovelace several times, in consequence of which he afterward died.

Lovelace weighed one hundred and seventy-five pounds. He would have pushed Graves, who was much lighter and smaller, out of the door, if it had been open. Lovelace did not know Graves at the time. The next day he asked what boy that was that shot him.

The foregoing gives a sufficient description of the scene, as defendant claims it occurred.

The substance of the contention on that side is that Mr. Lovelace lost his life at the hands of Graves, in a fight with the latter, brought on by the language and acts of the former.

It was not claimed, however, that Lovelace knew that Graves was armed, when the difficulty began.

The defendant asserts that "it is not an accidental killing, such as to make the defendant liable, where the death was the result of a rencounter, or where the party killed was the voluntary agent in bringing on the difficulty resulting in his death, or placed himself in such a position as to induce it."

On the other hand the plaintiff insists that the occurrence was an "accident."

The contract in this case is to be interpreted so as to give effect to the intention of the parties, as expressed by the language they have used. That intention is moreover, to be construed as the reasonable and natural one imported by their words. Rutherforth's Insts. [2 Am. Ed.], p. 413.

"In case of death by accident," is the language immediately in view.

In the same contract we note that the defendant was to pay $100, "in case of his death from natural causes."

The form of the contract is very simple. It is free from those limiting terms, which, in two, of the three, cases cited by the defendant, formed the basis of the judgments therein.

We are merely called on to say whether his death was by "accident" within the intention of these parties. They did not define the term, further than its use, in contradistinction to "death from natural causes," may be considered as having some significance.

We, hence, should give the word its usual, natural and popular meaning—there being nothing to indicate a different purpose in its use. In that sense, was Lovelace's death an accident?

We find the following definitions of "accident" in the law dictionaries.

"Death by accident means death from any unexpected event which happens as by chance, or which does not take place according to the usual course of things." Anderson (1889).

"An unusual or unexpected event." Abbott (1879).

"An unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence." Black (1891).

"An event which, under the circumstances, is unusual and unexpected by the person to whom it happens." Bouvier (1883).

"A casualty; an act of Providence; an event that takes place without one's foresight or expectation." Burrill (1887).

"An extraordinary incident; something not expected." Wharton, Law Lex. (1883).

The larger dictionaries of the English language furnish these, among other, definitions of "accident," viz:

"In general, anything that happens or begins to be without design, or as an unforeseen effect;  *   *   * Specifically, an undesirable or unfortunate happening; *   *   * a casualty or mishap." Century (1889).

"Literally, a befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event;  *   *   * often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a casualty; a mishap; as, to die by an accident." Webster, International (1892).

"An event proceeding from an unknown cause, or happening without the design of the agent; an unforeseen event; incident; casualty; chance." Worcester (1888).

On several occasions the courts have approved or or quoted some of the foregoing definitions, in dealing with the subject of accident insurance. *Schneider v. Ins. Co.* (1869), 24 Wis. 30; *Providence, etc., Co. v. Martin* (1869), 32 Md. 315; *Ripley v. Assur. Co.* (1870), 2 Bigelow's Life and Acc. Ins. Rep. 741; *North American, etc., Co. v. Burroughs* (1871), 69 Pa. St. 51; *Supreme Council v. Garrigus* (1885), 104 Ind. 140.

In other cases they have freely used the word, in decisions, in the broad meaning which those definitions express. *Vincent v. Stinehour* (1835), 7 Vt. 62; *Bost-*

*wick v. Stiles* (1868), 35 Conn. 195; *Clements v. Railroad* (1894), 2 Q. B. Div. 482.

Some special cases on accident policies, different from that now before us, furnish, nevertheless, opinions of learned judges which cast some useful light on the present controversy.

In *Sinclair v. Assurance Co.* (1861), 4 L. T. Rep. N. S., 15, a case wherein the court of Queen's Bench denied a right of recovery for death caused by a sunstroke sustained by the master of a ship in China, holding that such death was not "a personal injury arising from an accident at sea," it was said by Chief Justice COCKBURN: "It is difficult to define the term 'accident' as used in a policy of this nature, so as to arrive, with perfect accuracy, at the boundary line between death from accident and death from natural causes. At the same time, we think we may safely assume that in the term 'accident,' as so used, some violence, casualty, or *vis major*, is necessarily involved."

In *Fenwick v. Schmalz* (1868), L. R. 3 C. P. 313, WILLES, J., held that a snowstorm was not an accident (as mentioned in a charter party), because it is one of the ordinary operations of nature. He said it "is an incident rather than accident." He then remarked: "An accident is not the same as an occurrence, but is something that happens out of the ordinary course of things."

In *Ripley v. Railway, etc., Assurance Co.* (1870), already cited, it is said: "In the more popular and common acceptation of the word, 'accident,' if not in its precise meaning, includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event."

Death by drowning (*Winspear v. Ins. Co.* (1880), 6 Q. B. D. 42), and by fright (*McGlinchey v. Fidelity, etc., Co.* (1888), 80 Me. 251), have been held to be

deaths by accidents under policies of much narrower scope than that now before the court.

We have quoted these various cases, definitions and comments, not with a view to approve or criticise any one of them, but to indicate the very wide range of meaning borne by the word "accident," when unaccompanied with any limitation in the context.

We shall not attempt to furnish any general definition of an accident in the particular case before us, further than the conclusion we shall announce may imply.

The learned counsel for defendant concedes the force of the argument deduced from the ordinary meanings of the word, but insists that they can not apply where the insured has voluntarily assumed the risk which proves to be fatal, in this instance, by entering into the altercation which led to his death.

But there is one weak point in that contention. There is no proof, whatever, that the insured had any cause, or reasonable ground, to anticipate that he would be shot or killed, when he undertook to attempt to eject Graves from the hotel. There is no proof that Graves exhibited a weapon, or made any remarks indicating a purpose to shoot, before the affray. The mere fact that Lovelace engaged in, or brought on, a fight in the manner described, did not, of itself, indicate that he sought death, or had reason to expect it as a consequence of his action.

In *Schneider v. Ins. Co.* (1869), 24 Wis. 28, a party was allowed to recover upon an accident policy, though it appeared he had been negligent in attempting to board a moving train of cars. The court said:

"There is nothing in the definition of the word 'accident' that excludes the negligence of the injured party as one of the elements contributing to produce the result. * * * An accident may happen from

an unknown cause, but it is not essential that the cause should be unknown. It may be an unusual result of a known cause, and, therefore, unexpected by the party. And such was the case here, conceding that the negligence of the deceased was the cause of the accident" (p. 30).

That decision was approvingly followed in the case from the twenty-second Maryland report already cited.

In *Keene v. Mut. Accident Ass'n* (1894), 161 Mass. 149, 36 N. E. Rep. 891, a recovery on an accident policy was sustained, where the assured was run down while passing over a street crossing of a railway track in front of a moving freight car, notwithstanding the policy required the assured "to use all due diligence for personal safety."

In *Cornish v. Ins. Co.* (1889), 23 Q. B. Div. 453, it appeared that the insured met his death by attempting, in broad daylight, to cross the main line of a railway in front of a coming train which struck and killed him; the English court of appeal held that there could be no recovery upon a policy which excepted from the risks insured against, accidents happening by "exposure of the insured to obvious risk of injury." But LINDLEY, L. J. (who delivered the leading opinion), placed the ruling upon the language just quoted, remarking, in so doing, "We accept the view of the jury that this accident may be called an ordinary misadventure, but the question is, whether the policy covers it."

He thus characterized the mishap as an "accident" notwithstanding the gross negligence of the insured.

In *Traveler's Ins Co. v. McConkey* (1888), 127 U. S. 661, where the insured had been killed by a shot (whether fired by himself or by another was in issue), the supreme court of the United States based a similar ruling, denying a recovery, on the express terms of the

policy, excepting from its scope, "intentional injuries, inflicted by the insured or any other person."

A like ruling was made in construing the same language of an accident policy in this state. *Phelan v. Ins. Co.* (1890), 38 Mo. App. 640.

In other cases it has been held that death produced by the direct violence of a third party is none the less an accident (as regards the insured) because the injury was intentionally inflicted by the third party. *Hutchcraft's Ex'r v. Ins. Co.* (1888), 87 Ky. 300; *Richards v. Ins. Co.* (1891), 89 Cal. 170. But in the former case, a recovery was denied because of a clause in the policy similar to that quoted above from the *McConkey case.*

It has been declared, with reference to fire insurance that, even gross negligence of the insured will not defeat a recovery in the absence of stipulations having such an effect. *Shaw v. Robberds* (1837), 6 Ad. & El. 75; *St. Louis Ins. Co. v. Glasgow* (1844), 8 Mo. 713; *Johnson v. Ins. Co.* (1862), 4 Allen 388; *Enterprise Ins. Co. v. Parisot* (1878), 35 Ohio St. 35.

In *Supreme Council v. Garrigus* (1885), 104 Ind. 133, it was ruled that, where the insured engaged in a fight, without fault on his part, in consequence of which he received injuries resulting in his death, the latter was an "accident" within the meaning of a benefit certificate.

In view of the definitions and legal precedents above quoted and cited, and of the very general terms of the policy under consideration, we conclude that its reasonable and natural meaning includes, within the term "accident," such a death as Lovelace met.

Whether he acted lawfully as a guest of the hotel, during the absence and illness of the proprietor, in attempting to remove Graves from the hotel office by force, we think needless to investigate. It may be assumed that, by his course of conduct, he voluntarily

assumed the risks of a fight. But there is nothing in the circumstances to show that he voluntarily assumed the risk of death.

We consider his killing an "accident," in the popular and ordinary sense in which that word is generally used. It certainly was an accident, so far as he was concerned. We do not doubt that such should be the construction given to the word in the contract in suit; and that, in so concluding, we give effect to the true purpose and intent of the parties to the document.

The learned trial judge reached the same conclusion. The judgment is affirmed. BLACK, C. J., and BRACE and MACFARLANE, JJ., concur.