LAVINIA HESTER, Respondent, v. THE FIDELITY & CASUALTY COMPANY, Appellant.

Kansas City Court of Appeals, February 15, 1897.

1. **Accident Insurance**: JURY: INSTRUCTION. Where in an action on a policy of accident insurance the pleadings admit that death was caused by a gun shot wound, and put in issue whether the shooting was accidental, the jury should determine that issue under proper instructions, which should define the term "accidental means" and follow other suggestions set out in the opinion.

2. ——: PLEADING: ANSWER: EVIDENCE: INSTRUCTIONS. In an action on a policy of accident insurance plaintiff should allege and prove the issuance of the policy, the payment of the premium, the death of the assured, the giving of notice, and the making of proof and the general compliance with the conditions of the policy; and the answer should set up affirmatively any special matters of defense under the terms of the contract upon which they may rely, and it is error to instruct the jury that plaintiff must prove to their reasonable satisfaction a compliance with all the terms and conditions of the policy and that he did not violate any one of them.

3. ——: INTOXICATION: INSTRUCTION. Under the policy and evidence in this case an instruction which tells the jury if they believe from the evidence that the intemperate habits of the insured were the cause of the difficulty resulting in his death, is not sufficient, but should read, if the injuries were sustained in consequence of his being under the influence of or effected by or resulted directly or indirectly from intoxication, then the verdict should be for the defendant.

4. ——: PLEADING: PETITION. It is suggested that plaintiff's petition be amended to aver that the injuries ·from which the assured died were incurred by him through external, violent, and accidental means.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*Warner, Dean, Gibson & McLeod* for appellant.

(1) Defendant contends that the court should have given its peremptory instruction to the jury to find for

defendant. *Bean v. Assurance Corp.*, 50 Mo. App. 459;
*Smith v. Acc. Ass'n*, 62 N. W. Rep. 990; *Ins. Co. v.
Jones*, 80 Ga. 541; *Shaffer v. Ins. Co.*, 22 N. E. Rep.
589; *Tuttle v. Ins. Co.*, 134 Mass. 176, 177; *Neill v. Ins.
Co.*, 12 Canada Sup. Ct. 55, 72; *Gresham v. Ins. Co.*,
13 S. E. Rep. 752, 753, 754; *Ins. Co. v. Howell*, 41 N.
E. Rep. 968; *DeLoy v. Ins. Co.*, 32 Atl. Rep. 1108,
1109; *Indemnity Co. v. Dorgan*, 58 Fed. Rep. 945.
(2) But plaintiff maintains that it must be presumed
that Nicholas Smith was innocent of any wrongdoing
and that he was not guilty of an assault; in other
words, asserts that the law will presume that it was
an accident within the legal definition of that term and
that it must be presumed that he did not anticipate
getting killed by Biggs. Plaintiff bases her conten-
tion as to this point on the case of *Lovelace v. Protect-
ive Ass'n*, 126 Mo. 104, but on examination of that
case we assert that it does not apply to the one at bar
for two reasons: *First*, in that policy there was no such
clause as the one contained in the policy in the case at
bar,— voluntary exposure to unnecessary danger;
*second*, it is in terms stated by the learned judge ren-
dering that opinion that "there is no proof whatever
that the insured had any cause or reasonable ground
to anticipate that he would be shot or killed, when he
undertook to attempt to eject Graves from the hotel.
*Reaume v. Chambers*, 22 Mo. 53; *Erhart v. Diet-
rich*, 118 Mo. 427; *Brannock v. Elmore*, 114 Mo.
65; *Lee v. Knapp*, 55 Mo. App. 403, 404, 405.
"A presumption can not contradict facts or over-
come facts proved." Lawson on Presumptive Ev., p.
576, rule 119; *Van Buren v. Cockburn*, 14 Barbour (N.
Y.) 122; *Speer v. Burlingame*, 61 Mo. App. 94; *Galpin
v. Page*, 18 Wallace, 366. (3) The clause "voluntary
exposure to unnecessary danger" has again been
defined by an able court, which ruling has been fol-

lowed by this court. It is held that this clause simply means negligence or recklessness, and that negligence and voluntary exposure to unnecessary danger are equivalent terms. They mean the same thing. *Sawtelle v. Assurance Co.*, 15 Blatchf. 216, 217; *Morton v. Heidorn*, 37 S. W. Rep. 506 (supreme court of Mo.); *Cornish v. Ins. Co.*, 23 Q. B. L. R. 453; *Bean v. Assur. Corp.*, 50 Mo. App. 462; *Hudson v. R'y*, 101 Mo. 31; *Corcoran v. R'y*, 105 Mo. 405. (4) We now reach the question as to whether or not instruction number 3 given for defendant was the law. If that instruction embodied a correct principle of law, then the court should not have granted a new trial, and its action in so doing must be reversed. The learned judge below granted a new trial because this instruction placed the burden of proof on the plaintiff, when, in his opinion, it was upon the defendant. We contend that the burden of proof was properly placed on the plaintiff under the pleadings in the case. Being placed there by the pleadings, it could not be shifted to the defendant. *Livery Co. v. McKelvy*, 55 Mo. App. 241–245; *Long v. Long*, 44 Mo. App. 142, 143, 147.

*Thomas D. Windiate* and *McDougal & Sebree* for respondent.

(1) The demurrer to the evidence was properly overruled. (2) The court properly granted a new trial on account of the error in giving instruction number 3 on the part of the defendant. *Meadows v. Ins. Co.*, 129 Mo. 76, and cases cited; *Anthony v. Association*, 38 N. E. Rep. (Mass.) 973; *Badenfield v. Ins. Co.*, 13 L. R. A. (Mass.) 263, and note; s. c., 154 Mass. 77; *Ins. Co. v. Ewing*, 92 U. S. 377; *Sutherland v. Ins. Co.*, 54 N. W. Rep.; s. c., 87 Iowa, 505; *Association v. Sargent*, 142 U. S. 691; *Cotten v. Fidelity Co.*, 41 Fed. Rep. 506. (3) There were other good grounds

for a new trial set out in the motion, and this being the case it is of no importance whether the reason given by the court is a good one or not; the order will not be disturbed. *Bunyan v. Company*, 127 Mo. 12, 22. It is from the order granting a new trial, and not the reason given for such order, that the appeal is taken. Laws of Missouri, 1891, p. 70. (4) The death of Smith was an accident within the meaning of the policy. *Collins v. Fidelity Co.*, 63 Mo. App. 253, and cases cited; *Lovelace v. Ins. Co.*, 126 Mo. 104.

SMITH, P. J.—This is an action by the beneficiary on an accident life insurance policy. The petition alleged, amongst other things, that while PLEADINGS. the plaintiff was the wife of one Nicholas Smith, the defendant, in consideration of certain premiums to it paid by said Smith, issued to him a policy of insurance whereby it insured his life in the sum of $1,500 against bodily injuries sustained through external, violent, and accidental means, and agreed to pay plaintiff the sum of $1,500, if death should result to said Smith from such injuries ninety days from the time such injuries were sustained, etc. It further alleged that said "Smith died, leaving this plaintiff surviving him, from a gun shot wound having been received by him not more than five days before his death, to wit, on or about the twenty-third day of December, 1894; the said wound was made by a leaden bullet fired from a gun held and discharged by a person to the plaintiff unknown, and whose purpose in firing said gun was to plaintiff unknown, which bullet entered his neck and penetrated his pleura and one of his lungs, and the wound made by such bullet caused his death; that at the time of his death all the premiums then due on said policy were fully paid and that he in all respects had on his part complied with the

provisions and conditions of the said policy of insurance. It further alleged the giving of timely notice, the furnishing of proofs of death and that plaintiff had fully complied with all the conditions of the policy, etc.

The answer pleaded three defenses:

*First,* that it was provided by the terms of said policy that the insurance did not cover voluntary exposure to unnecessary danger and that the injuries complained of, and from which said Smith came to his death, were the direct and immediate result of his voluntary exposure to unnecessary danger, etc. *Second,* that it was further agreed in the application that said policy should be based upon the statement of facts therein contained which he, the said Smith, warranted to be true; that amongst the statements of fact therein made was one to the effect that "my habits of life are correct and temperate and I understand that the policy will not cover any accidental injury which may happen to me, either while under the influence of intoxicating drinks, or in consequence of my having been under the influence thereof." It was further alleged that said Smith was of intemperate habits and a habitual drinker of intoxicants and that his said statement was, therefore, false, etc. *Third,* that it was further agreed that in the policy that the said application and policy did not cover injuries, fatal or otherwise, received while, or in *consequence* of having been, under the influence of, or effected by, or *resulting* directly, or indirectly from intoxicants; that the injuries complained of were received by said Smith while he was under the influence of and effects of intoxicants and were the direct result of the influence of the same, etc.

Reply was a general denial coupled with the admission that the injuries mentioned in the answer were the same as those mentioned in the petition. There

was a trial and at the conclusion of all the evidence the defendant interposed a demurrer thereto which was by the court disallowed. The verdict was for the defendant. The plaintiff filed a motion to set the same aside which was by the court sustained, and thereupon the defendant appealed. The defendant objects that the court erred in disallowing its demurrer to the evidence.

It is conceded by the pleadings that the said Smith died from the effect of a gun shot wound; and, therefore, it stood admitted that he came to his death from injuries sustained through external and violent means. Whether the injuries sustained were accidental within the meaning of the policy was an issue of fact made by the pleadings. *Lovelace v. Travelers' Protective Association*, 126 Mo. 104, was where no one was left in charge of the office of a hotel, the proprietor being at the time absent on account of sickness, and Lovelace, a guest and friend of the proprietor, observing that one Graves was there making more or less noise and at times cursing, requested him to get out. Graves replied: "You had better put me out." Lovelace then said: "I will do it in a pair of minutes." Graves replied with an oath that "he would like to see him (Lovelace) put him out." Lovelace·said: "I will do that —— quick." Lovelace then further said, with an oath: "Don't you shake your hand in my face." They were then a few feet apart. Graves replied: "You put me out! You have not got any more to do with this than I have." Lovelace then declared he would slap Graves and applied an opprobrious epithet to him. The former then slapped and pushed the latter back until he struck the wall. Whilst they were together Graves drew a pistol from his pocket and shot Lovelace several times in consequence of which he afterwards

died.   It was held that the killing of Lovelace was an accident in the popular and ordinary sense in which the word was generally used and certainly so far as he was concerned, and that such should be the construction given the word in the contract in suit.

The evidence in the present case tends to prove that on the day of the homicide, that Smith went to Kansas City and returned home between 5 and 6 o'clock in the evening.   He had some unpleasant words with Biggs, and went on to his, Smith's, home. Supper was not ready and he took his gun and started to the coal chutes.   Smith lived just back and south of the home of a witness by the name of Brooks, with whom Biggs lived, Brooks' back yard running back near Smith's house.   The Smiths were not on good terms with Brooks and Biggs.   The coal chutes were about a quarter of a mile northeast from where Brooks and Smith lived, and in going there Smith passed along by Brooks' house.   Biggs, who was in Brooks' back yard when Smith passed along, saw that he was going toward the coal chutes.   A short time after Smith had gone, and after it was dark, Biggs went to his room in Brooks' house, put his pistol in his pocket and went in the direction of the coal chutes. He testified that he was going to the house of Mrs. Combs, which was in the direction of the coal chutes, for the purpose of taking a young lady to church, but he did not stop there but followed the railroad tracks beyond and on toward the coal chutes.   He further testified he found Smith within one hundred feet to two hundred feet of the coal chutes; that Smith drew his gun on him and that he then told Smith that he had his pistol and that Smith then cocked his gun, that he (Biggs) pushed the gun aside and shot Smith. There was no other eyewitness to the shooting and it is uncertain where it occurred, for shortly before the

FACTS.

shooting Smith was seen in the neighborhood of the coal chutes, and there was blood found near there next day, and some minutes after the shooting he was seen going west on the railroad tracks toward his home. He was found wounded, lying on the railroad tracks about seven hundred feet from the coal chutes, which was about half way between the coal chutes and his home.

In the light of the ruling in the *Lovelace* case, *supra*, we think the evidence was quite sufficient to authorize the submission of the case to the jury. *Phelan v. Ins. Co.*, 38 Mo. App. 640; *Supreme Counsel v. Garrigus*, 104 Ind. 133. It was for the jury, under proper instructions, to say from the evidence ACCIDENT insurance: jury: instruction. whether or not the injuries were sustained by said Smith through accidental means. The court should, in view of what is said in the *Lovelace* case, by an instruction, have defined the meaning of the term "accidental means" and then, in substance, directed the jury that if they believed from the evidence that the bodily injuries from which Smith met his death were sustained through accidental means, as therein previously defined, to find for the plaintiff, unless they further believed from the evidence that said Smith voluntarily exposed himself to unnecessary danger at the time he sustained the injuries which resulted in his death, or that his injuries were received while, or in consequence of his having been, under the influence of, or effected by, or resulting directly or indirectly from, intoxicants, or that the statement contained in his application for the policy in suit to the effect that his habits of life were correct and temperate was false, then they should find for defendant. Such an instruction in its scope would have comprehended every decisive issue made by the pleadings.

The defendant further objects that the court erred

in granting a new trial on the ground assigned in its order therefor, to wit: That instruction number 3, given for defendant, was erroneous. This instruction ——: pleading: answer: evidence: instructions. was as follows: The court instructs the jury that the fact that the defendant issued the policy of insurance read in evidence, and the further fact that Nicholas Smith, the man named in said policy, was shot and killed by Charles Biggs, do not of themselves entitle plaintiff to recover in this action. She must go further and show to the reasonable satisfaction of the jury that said Nicholas Smith complied with all the terms and conditions of said policy, and did not violate any one thereof. The direction contained in the first sentence of this instruction is perhaps well enough, but that contained in the latter part of it is grossly erroneous and misleading. Under our practice act, Revised Statutes, section 2079, a petition in a case like this is sufficient if it distinctly alleges that plaintiff has complied, on his part, with all the conditions of the policy. *Richardson v. Ins. Co.*, 57 Mo. 413; *Oakey v. Ins. Co.*, 29 Mo. App. 105. But it will not be sufficient for the answer to plead a general denial. The defense may arise from default in performance of some of the conditions; and•performance having been pleaded the denial *would of course theoretically* bring *into issue the defense relied upon*. But the uniform practice of the courts requires that all matters of defense under the terms of the contract *shall be specially pleaded*. Ostrander on Fire Ins., sec. 415.

The plaintiff need not allege the truth of the statement contained in the application, nor performance or nonperformance of conditions subsequent, nor negative prohibited acts or exceptions or allege that he is within the excepted risks. May on Ins., sec. 59. Stipulations added to a principal contract which are intended to

avail by way of defeasance or excuse must be pleaded in the answer. *Coburn v. Ins. Co.*, 145 Mass. 226. It is said in *Ins. Co. v. Rogers*, 119 Ill. *loc. cit.* 485, "that it is not necessary for the plaintiff in an action on the policy to either allege or prove such matters as appear in the application only. To be availed of as a defense without regard to whether they are warranties, or representations, merely, their falsity or breach by the assured must be set up and proved by the defendant as matter of defense." And to the same effect is *Ins. Co. v. Ewing*, 92 U. S. 377. In *Benefit Ass'n v. Grannan*, 107 Ind. 288, it was ruled that the burden is on the insurer to prove the untruth of the statements made by the deceased in his application for the policy. And of like effect in *Ins. Co. v. Brown*, 57 Miss. 308. In *Balkenburgh v. Ins. Co.*, 70 N. Y., the policy by its terms provided that if the assured died of disease induced or aggravated by intemperance it was avoided. It was held that the burden of proof was on defendant to show a forfeiture of the policy under this condition. And in Biddle on Insurance, 557, it is' stated that though there are a number of warranties in the policy, the insurer must affirmatively show noncompliance. 119 Ill., *supra*, was a suit on a policy of life insurance. The court declared that the plaintiff was bound to allege and show in her declaration the making of the policy, the items, the payment of the premium, the death of the assured and the giving of the notice, the making of the proof thereof to the company. When these allegations had all been proved in so far as their proof had not been waived or dispensed with, a *prima facie* right of recovery was made out against defendant, which the latter was bound to meet by some affirmative action, otherwise plaintiff was entitled to judgment.

In the case at bar the court instructed the jury that the plaintiff was not only required to prove to the rea-

sonable satisfaction of the jury that the deceased com-
plied with all the terms and conditions of the policy
but did not violate any one of them.   By reference to
the policy it will be seen that it contains a great num-
ber of unpleaded exceptions and that there are some
distinct conditions printed on the back thereof likewise
unpleaded.   None of such exceptions and conditions
were in any manner put in issue by the pleadings.
Ingenious counsel might very well have pointed the
jury to the various exceptions, conditions, and warran-
ties in the policy and then told them that the plaintiff
had adduced no evidence showing that deceased had
complied therewith, and, therefore, there had been no
compliance with the terms and conditions of said policy.
This instruction afforded counsel, in the argument to
the jury, ample opportunity to mislead and confuse the
mind of the jury in respect to the issuable facts they
were required to determine.   No distinction was made
to appear between the conditions, exceptions, repre-
sentations, and the warranties of the policy, nor between
those put in issue by the pleadings and those that were
not.   The jury might have very well concluded that by
this instruction they were told that the burden of proof
was imposed upon plaintiff to show that the statement
made by her deceased husband in his application, in
respect to his habits of life, were true; that the inju-
ries from which he died were not received while or in
consequence or as a result of having been under the
influence of intoxicants; and that he did not volun-
tarily expose himself to unnecessary danger at the time
of the receipt of the injuries from which he died.
According to the authorities to which we have referred
the burden was on the defendant to establish the alleged
ground of forfeiture.   This instruction was calculated
to impress the jury with convictions to the contrary,
and should not, therefore, have been given.

The defendant's fourth instruction is not entirely unexceptionable in expression. The language of that part of it which declares that if the jury believed from the evidence the intemperate habits of said Smith were *the cause* of the difficulty with Biggs, then the verdict should be for defendant, should be so modified as to read that *if the injuries of the said Smith were sustained in consequence of having been under the influence of or effected by or resulted directly or indirectly from intoxicants that the verdict should be for the defendant.* The propriety of this modification will become apparent by reference to the terms of the exception in the policy on which the instruction was based.

*——: intoxication: instruction.*

As we shall uphold the action of the court in awarding the new trial it is not out of place to here suggest that before the cause is retried that the petition should be amended since it does not expressly allege that the injuries from which Smith died were incurred by him through *external, violent, and accidental means.* It is even doubtful whether the facts alleged are sufficient to justify the inference that the injuries complained of were so incurred. An allegation to this effect is essential to support a judgment for plaintiff.

*——: pleading: petition.*

It results that the order of the circuit court setting aside the verdict and granting a new trial will be affirmed which is accordingly ordered. All concur.