## THE TRAVELERS' INSURANCE COMPANY *vs.* JONES.

80 541
103 80
80 541
118 903

1. During a dark and rainy night, for a person with two packages in his hands or arms to attempt, by choice, to pass over a trestle which he knows to be dangerous, other ways of travel being open to him, is, on his part, "voluntary exposure to unnecessary danger, hazard or perilous adventure," notwithstanding this was his usual way of travel, his usual route to his home, and he had been going that way for ten years, and many others went the same way.

2. An irrelevant charge by a justice of the peace is not obligatory upon the jury, and when the plaintiff in error has caused it to be given and pronounced obligatory, a reversal here of a judgment granting a new trial is not to be expected, though the verdict is apparently correct. Let the prevailing party take the consequences of a new trial which, whatever may be the substantial merits of the case, is justified by an illegal charge prompted by his own counsel.

March 28, 1888.

Negligence. New trial. Practice in Supreme Court. Before Judge ATKINSON. Glynn superior court. December adjourned term, 1886.

Reported in the decision.

FRANK H. HARRIS, for plaintiff in error.

SMITH & BORCHARDT, by brief, *contra*.

BLECKLEY, Chief Justice.

Jones had an accident policy, commencing to operate in June, 1884, and continuing of force for one year. In January, 1885, he undertook to pass from some point in the city of Brunswick to his home in that city, and in walking along a railroad track, he stepped upon a trestle several feet in length, consisting of cross-ties elevated some six or eight feet above the bottom of a ditch, and requiring several steps (each from one cross-tie to another) to pass over it. The night was dark and rainy. He had in his arms or hands two packages; and while endeavoring to pass, he made a misstep and fell through and hurt himself seriously. The contract contained a stipulation exempting the company from liability for injuries occasioned by "voluntary exposure to unnecessary danger, hazard, or perilous adventure." The defence was that this injury was within the exemption; and the evidence showed that Jones knew the place was dangerous; and all the witnesses regarded it as dangerous. There were other ways to reach his home, but that was the usual way he traveled, and

many others traveled that way. He had been going that
way for ten years; it was his usual route home; but he
knew it was dangerous, as he testified himself. A plan
of the city in the immediate neighborhood and including
the scene of the accident is in the record, from which it
appears that there were other ways of access to his house
which were open; and we do not see in the record why
he should have taken this risk, unless at his own expense.
The suit was in a justice's court, and the magistrate gave
judgment against the plaintiff, and he appealed to a jury;
the jury found against him, and he carried the case to the
superior court by *certiorari*. That court sustained the
*certiorari* and ordered a new trial; the errors alleged be-
ing that a certain charge requested by counsel for the in-
surance company was given by the justice of the peace to
the jury, and also that the verdict was contrary to law,
to the evidence, to the weight of evidence and the prin-
ciples of justice.

1. The judge in ruling upon the case held that the ver-
dict might well be (he does not say that he absolutely
judged it to be) contrary to the evidence and the weight
of evidence. On this question we differ with him. The
verdict was amply justified by the evidence; and the only
doubt is, whether it was not compelled. For my own part,
I can scarcely see how the jury could have rendered any
other verdict. But this is eminently a question for the
jury, and if the instructions of the court had been correct,
we should have no hesitation in overruling his honor in
sustaining this *certiorari*.

2. But there is a very faulty charge, procured at the in-
stance of counsel for the prevailing party. That charge is
so flagrantly illegal, as applied to the facts of this case,
that we do not feel authorized to reverse the judgment,
since the error was caused by the now complaining party,
through its counsel. There was no occasion for it. It
seems to have been as unnecessary a hazard as the cross-
ing of the trestle. It was a kind of trestle in the case—a

trestle that one had to go out of his way to walk over. This being so, we affirm the judgment. The charge to which we allude, and which, so far as appears, embraced all the instructions given to the jury, was as follows: " I charge you that if you should find from the evidence that the plaintiff, Robert Jones, received injuries while voluntarily exposing himself to unnecessary danger, hazard or perilous adventure, then the verdict must be for the defendant; that when a contract is reduced to writing, it then becomes the evidence of what that contract is, and that the presumption is that when a man signs a contract he does it with full notice of its terms and conditions, and that a man would not be allowed to say that when he signed it he did not know the contents, unless he further showed that the other party had committed a fraud upon him by false representations of its contents and that he could not read. I charge this to be the law of this case, and under it you must find your verdict." The whole of this charge as to reducing the contract to writing, presumption, full notice, fraud, false representations, could not read, etc., is irrelevant to anything found in the record. But the hurtful instructions were, that "under it, you must find your verdict." The most of it should have been wholly disregarded in finding the verdict. Why should such an irrelevant charge be pronounced obligatory upon the jury? To recite a state of facts not in dispute, and add, " I charge this to be the law of this case, and under it you must find your verdict," is not a fair or safe mode of submitting the real controversy to a jury. The other side was not submitted at all.

Judgment affirmed.