CHARLES C. JONES v. THE UNITED STATES MUTUAL ACCIDENT ASSOCIATION OF THE CITY OF NEW YORK, Appellant.

**Action on Accident Policy.** Death by violent means is presumed to be accidental, and the insurer must overcome such presumption.

DOING PROHIBITED ACT. Visiting a bawdyhouse, unlawful carrying of weapons, and leaving such house for the street, needlessly, the first two acts being covered by prohibitive clauses, do not absolve the insurer unless some causative connection between said acts and the injury to assured be shown, and a refusal to charge that said acts were, as matter of law, a voluntary and unnecessary exposure to damage, was right. *Ins. Co. v. Jones*, 7 S. E. Rep. (Ga.) 83, and *Shaffer v. Company*, 22 N. E. Rep. (Ill.) 589, distinguished.

**Practice.** Though a policy provides that its covenants of exemption, if death results from stated causes, are "conditions precedent," it is for the insurer to prove a breach of such conditions. And so, though issue is joined on the petition, which needlessly negatives breaches.

SAME. Plaintiff was permitted to read from defendant's answer a clause that "defendant admits that due proof of death of said Jones was received" in due ,time. He did not, however, read another clause, to wit: "But denies that such proof establishes that the death of Jones was caused by external, violent, and accidental means." *Held,* no error.

SAME. One issue being whether assured came to his death by voluntarily engaging in a fight, testimony was offered and given tending to show that an alleged assailant of the assured was of bad character, had made general preparation to rob people, and that he fired at decedent feloniously. Much of this was hearsay. After its admission it was stricken out and the jury told to disregard it. The court was asked informally to instruct upon said testimony, but failed to so charge. *Held,* the erroneous admission was not cured by the court's admonition. DEEMER, J., took no part.

*Appeal from Pottawattamie District Court.*—HON. H. E. DEEMER, Judge.

SATURDAY, DECEMBER 15, 1894.

ACTION on an accident insurance policy. Verdict and judgment for plaintiff, and defendant appeals.— *Reversed.*

*Breckenridge & Breckenridge* and *L. F. Crofoot* for appellant.

*Sims & Bainbridge* for appellee.

KINNE, J.—I. April 8, 1891, the defendant company issued its policy of insurance upon the life of one W. M. Jones, in the sum of five thousand dollars, against "personal bodily injuries, effected during the continuance of membership and this insurance, through external, violent, and accidental means." Among the conditions of said policy were the following: "The insurance under this contract shall not extend to or cover * * * accidental injuries or death resulting from or caused, directly or indirectly, wholly or in part, by * * * fighting; * * * or voluntary exposure to unnecessary danger; nor extend

to or cover accidental injuries or death happening while the insured is under the influence of intoxicating drinks, or in consequence thereof; or while or in consequence of violating the law." And also: "The provisions and conditions aforesaid, and a strict compliance therewith during the continuance of this contract, are conditions precedent to the issuance hereof, and to its validity and enforcement." The application upon which the policy was based contained the following statement: "(13) My habits of life are correct and temperate, and I agree that the certificate of membership shall not cover any injury which may happen to me while under the influence of intoxicating drinks or narcotics, or in consequence of having been under the influence thereof." The policy was made payable to plaintiff. The petition charges "that on or about the thirty-first day of May, 1892, at Council Bluffs, Iowa, and whilst the said policy of insurance was in full force and effect, and without any fault or negligence on the part of the assured, he, the said W. M. Jones, was mortally wounded by a pistol ball fired by one John Wade," and that he died as a result thereof. It is also averred that proper proofs of death were sent to and received by the company in due time. A copy of the application and of the policy is attached to the petition. The answer admits the issuance of the policy and the death of the assured, but denies that his mortal wound "was received without his fault and negligence." Admits that due proofs of death were received by the company within the time fixed in the policy, but denies that such proofs established that the death of Jones was caused by external, violent, and accidental means. Pleads the provision of the application above set out, and numbered 13, also the provisions of the policy heretofore set forth, and avers "that said Jones was addicted to the use of intoxicating liquors, and was in the habit of associating with lewd women

and visiting houses of ill fame, and at the time he received the mortal wound, from the pistol shot of which he died on June 5, 1892, he was, and had been during a period of several days, and certainly for several hours, in a drunken debauch, under the influence of intoxicating liquors; and the shot which ended his life was received by him during a quarrel which began in a brothel, while he was under the influence of intoxicating liquors, and in consequence of his having been under the influence of intoxicating liquors, which quarrel terminated in a fight with pistols or revolvers, in the course of which Jones killed the man who shot him." Defendant denies that said W. M. Jones came to his death by violent, external, and accidental means, but alleges that his death was not accidental, and that at the time he received the mortal pistol wound, of which he died, he was under the influence of intoxicating liquors, and that the pistol shot wound that caused his death was received by him in consequence of his having been under the influence of intoxicating liquors, and in consequence of his quarreling and fighting, and in consequence of his exposure to unnecessary danger at the time he was shot, and in consequence of his violation of law, in being intoxicated, in visiting a house of ill fame for an unlawful purpose, in carrying a concealed weapon, and in fighting." The cause was tried to a jury, and a verdict returned for the plaintiff for the amount claimed.

II.   To a proper understanding of the case, it becomes necessary to state the facts surrounding the death of the assured:   He was the manager for the state of Nebraska, of the business of the Sandwich Manufacturing Company, of Sandwich, Illinois, and resided in Council Bluffs, Iowa.   On Sunday afternoon, May 30, 1892, Jones was at Lake Manawa, a resort near Council Bluffs.   He returned to the city toward evening, and from near 7 o'clock P. M., up to a short

time before he was shot, he had, in company with one Mahr, a disreputable character, visited several drinking places, and drank liquors.   About 11 o'clock P. M. Jones and Mahr visited a house of ill fame, and while there drank beer.  While in this place, Jones attempted to make arrangements for two of the inmates to go with him and his companion to a "road house," and he ordered a hack for that purpose.  Meantime, the proprietress of the establishment, being unwilling for the inmates to go, raised her price, and the trip was abandoned.  Jones, Mahr, and Wade (who had responded to the call for a hack) left the house, and went out onto the street, at about midnight.  After they reached the sidewalk, Jones and Mahr started to go down the street, when some controversy arose about paying for the hack.  Wade asked them if he was not going to get anything for his hack.  Jones said to Wade, "How much do you want?"  Wade said he thought one dollar would be about right for coming out at that time of night.  Mahr did not want Jones to pay anything for the hack.  Colgan, who was the hack driver, told Mahr there was no use talking that way; they could not fetch out a hack for nothing.  Mahr then said he would give Colgan something to fetch out a hack for, and struck at him with his cane.  When Mahr did this, Colgan started to run.  As he did so, he turned around, and saw that Mahr was close behind him, and Jones right behind Mahr.  Jones reached to his hip pocket, and took something out, and then Wade said "to stop, or he would shoot."  Colgan continued to run up the street, with Mahr after him, and at once several shots were fired; and shortly after, Wade was found shot through the body, and died in a few minutes.  A little distance away, Jones was picked up, having also been shot, from the effects of which he died in a few days thereafter.  Jones was seen to have a revolver and a billy upon his person while in the bawdyhouse.  There

was much testimony tending to show that Jones had been drinking intoxicating liquor during the evening and that he was noticeably under the influence of it. On the contrary, much evidence was introduced showing that he was not under the influence of liquor. In answer to certain special interrogatories submitted to them, the jury found that Jones was not intoxicated that night; that he was not under the influence of intoxicating liquors when he was shot, or during the night; and that he did not, prior to the shooting, take part in a quarrel, which terminated in a fight with revolvers, in which he shot and killed Wade.

III.    At the close of the testimony, defendant filed a motion in arrest of judgment, claiming that the petition did not state a cause of action, in that it failed to aver that none of the conditions upon which the policy was issued were "breached" by the assured. This motion was overruled, and an exception taken. Defendant's contention is that it was only to be liable in case of death of the assured in the absence of certain conditions stated in the policy, and that it was incumbent upon the plaintiff to negative these exceptions in his petition. The question then is, must these conditions or exceptions, the existence of which may relieve the defendant from liability, be pleaded by plaintiff, or are they so far matters of defense as that the burden is upon the defendant to plead and prove them? In our judgment, they were not required to be pleaded or proven by plaintiff. They were purely matters to be relied upon in defense of an action on the policy. Defendant insured Jones, "subject to the by-laws and all the conditions indorsed hereon [on the policy], against personal bodily injuries effected during the continuance of membership and this insurance, through external, violent, and accidental means." On this policy it is said, "The conditions under which this certificate is issued and

accepted by the insured are as follows." Then follow the several provisions that the contract shall not extend to or cover certain cases, heretofore mentioned. At the end of these conditions it is said, "The provisions and conditions aforesaid, and a strict compliance therewith during the continuance of this contract, are conditions precedent to the issuance hereof, and to its validity and enforcement." It ought to be said that the fact that the contract says that certain provisions of it shall be conditions precedent does not, of necessity, make them such. We can not accede to the doctrine that the provisions under consideration are conditions precedent. A condition precedent, as applied to a contract, is a condition which must be performed before the agreement of the parties becomes a valid contract. *Redman v. Insurance Co.*, 4 N. W. Rep. 595, 49 Wis. 431. The conditions in this case were that the contract should not cover accidental death resulting from or caused by fighting, voluntary exposure to unnecessary danger, intoxication, or to death in consequence thereof, and in consequence of violating the law. Not one of these conditions were to happen prior to the time the contract between the assured and the company should become binding. The contract became binding upon the company as soon as it accepted the assured as a member, and issued to him its policy. The situation then is this: That there was a valid contract of insurance when the policy issued, but it might thereafter, upon the happening of some of these conditions, cease to be enforcible. If, then, these provisions of the policy can be properly called conditions, they are in no sense conditions precedent. Under them the defendant might be relieved from liability. They were each and all matters of defense, available to the defendant; but, not constituting a part of the plaintiff's case, the burden did not rest upon him to either plead or prove the absence of them, in the first instance. *Red-*

man v. Insurance Co., supra; Coburn v. Insurance Co., 145
Mass. 226, 13 N. E. Rep. 604; Freeman v. Insurance Co.,
144 Mass. 572, 12 N. E. Rep. 372; Insurance Co. v. Nichols, 24 S. W. Rep. (Tex. Civ. App.) 910; Badenfeld v.
Association, 27 N. E. Rep. (Mass.) 770; Insurance Co.
v. Ewing, 92 U. S. 377; Cronkhite v. Insurance Co., 43
N. W. Rep. (Wis.) 731; Newman v. Association, 76
Iowa, 64, 40 N. W. Rep. 87; Sutherland v. Insurance
Co., 87 Iowa, 505, 54 N. W. Rep. 453.    The motion in
arrest was properly overruled.

IV.  It is contended that inasmuch as it was stated
in the petition that, "without any fault or negligence
on part of the assured, the said W. M. Jones
was mortally wounded by a pistol shot fired by
one John Wade," the petition did in fact undertake to negative the conditions heretofore mentioned,
and therefore the burden was upon plaintiff to establish
the truth of his allegations.    The court properly held
that the burden on this issue was upon the defendant.
It is true that the defendant joined issue on this allegation of the petition, but by so doing it did not make an
allegation material which was not so before.  We have
heretofore said that plaintiff was not bound, in the first
instance, to negative these conditions of the policy.  If
the allegation be treated as so doing, then it was an
unnecessary allegation.    The cause of action stated
was complete without the allegation as to want of
"fault or negligence."    Being an unnecessary allegation, it was not incumbent upon plaintiff to establish
it by the testimony.    Billingham v. Bryan, 10 Iowa,
317; Specht v. Spangenberg, 70 Iowa, 489, 30 N. W.
Rep. 875.

V.  Appellant asked several instructions to the
effect that the burden of proof was upon the plaintiff
to show that the death of Jones, the beneficiary in the
policy, was the result, not only of external and violent
means, but also of accidental means.  In other words,

it was claimed that the burden was upon the plaintiff to show that the death of Jones was accidental, within the meaning of the policy. The court told the jury that if plaintiff had shown by the fair weight of the evidence that the assured came to his death as the result of a pistol shot held in his own hands, or in the hands of another, then the law will presume that the shot was accidental, and that it was not inflicted with murderous or suicidal intent. And under such circumstances the burden will be upon the defendant to overcome this presumption, and to show that the death was not caused by accidental means." The instruction was correct. It can make no difference, so far as defendant's liability is concerned, whether Wade fired the shot with the intent to kill Jones or not. If he had such intent when he fired the shot, and if Jones was not at fault in the matter,—if he did nothing to cause or provoke the act,—then, clearly, as to Jones, the injury resulting from the shot was accidental. In the absence of evidence to the contrary, the law presumes that Jones was without fault. There was no direct testimony to show that Wade, in firing the shot, had any intent to injure or kill Jones. Then, the presumption which the law raises where one has been killed by external and violent means, as in this case, that the injury was the result of accident, will prevail until overcome by evidence. *Utter v. Insurance Co.*, 32 N. W. Rep. (Mich.) 812; *Insurance Co. v. McConkey*, 127 U. S. 661, 8 Sup. Ct. Rep. 1360; *Mallory v. Insurance Co.*, 47 N. Y. 52; *Insurance v. Bennett*, 16 S. W. Rep. (Tenn.) 723. It must also be borne in mind that the provisions and conditions of the policy in the case at bar do not cover, in terms, the case of injuries inflicted upon the assured by another person, and in this respect this case is, in its facts, unlike the *McConkey* case. There was, therefore, no error in giving and refusing instructions relating to this

matter. 1 American and English Encyclopedia of Law, p. 89; *Supreme Council v. Garrigus*, 104 Ind. 133, 3 N. E. Rep. 818; *Hutchcraft's Ex'r v. Travelers' Insurance Co.*, 87 Ky. 300, 8 S. W. Rep. 570; *Insurance Co. v. Bennett*, 16 S. W. Rep. (Tenn.) 724.

VI. The court, against defendant's objection, permitted plaintiff to read to the jury the following from defendant's answer: "Defendant admits that due proof of death of said W. M. Jones was received by it within the time limited by it in said policy to make such proofs." The objection was that the offer did not include all of the answer which related to the same subject. The balance of the paragraph reads: "But denies that such proof established that the death of said Jones was caused by external, violent, and accidental means." There was no error in this ruling. The answer plainly admits the receipt of proofs of death in due form, and within the time limited in the policy. The balance of the paragraph was simply a denial that death was caused by external, violent, and accidental means. That allegation was consistent with defendant's theory of the case, but in no way qualified the admission which preceded it.

VII. One Gibson was introduced as a witness for plaintiff, in rebuttal, and was asked as to a conversation he had with Wade on the Saturday evening preceding the shooting, and in the absence of Jones, the assured. His testimony was objected to as incompetent, hearsay, and immaterial. At this point counsel for plaintiff stated that the testimony of the witness bore upon the intent of Wade at the time of the shooting, and as to who was the aggressor, —as to what preparation had been made for the affray. It appeared that Wade at that time did not know Jones. Counsel for defendant objected to plaintiff's counsel stating, in the presence of the jury, what he expected to prove, but expressed a willingness for him

to state it to the court, or to put it in writing and hand it to the court. The court directed plaintiff's counsel to state what he expected to prove, and at the same time told the jury that what he stated should not be accepted by them as evidence. Whereupon counsel for plaintiff made this statement: "I expect to prove by the witness that Jack Wade was the owner of two revolvers,—one small one and one very large one; that he had pawned them to this man Gibson for a certain amount of money; that he came to get one of the revolvers Saturday night and said he wanted this large revolver because he might need it in his business, or something like that; that he was a hack driver; and that he had once related before to this witness how he had an opportunity to make one hundred dollars from his passenger if he only had had his gun with him. I want to show that the witness refused to let him have the large revolver. (Objected to as incompetent, immaterial, and hearsay.) I propose to follow up this testimony with other testimony tending to show that this man Jack Wade grabbed Jones by the watch chain, and grabbed for the money that he was just withdrawing from his pocket to tender to this man Wade in payment for the hack, and that he grabbed the watch chain and grabbed at the money, with a drawn revolver. It seems to me I ought to be permitted to show what kind of a man this man Wade was. Not that he had Jones in mind when he made this preparation, but that he was prepared for an opportunity of that kind." All of this was properly objected to. Thereafter Gibson testified as to the age of Wade. That he was a rough kind of a fellow. That he had in his possession a large revolver belonging to Wade, which was then produced before the jury. That Wade wanted that revolver. That he said he had use for it; he wanted a bigger gun than he had. That he said, if he had had that gun last night, he could have

had one hundred dollars. That he took a man to Omaha. He said, "just as easy as not," if he had had that big gun. That he said he wanted that gun to-morrow night. Other like testimony was given by this witness. Defendant moved to strike all of the testimony out, and the motion was sustained. Whereupon the court directed the jury to not consider the evidence or the revolver, and that the latter was not in evidence. That this evidence was immaterial and improper, there can be no question. If it tended to prove anything, it was the character of Wade,—his attempted preparation for an encounter,—and so may be said to bear upon his intent in firing the shot which killed Jones. But, as we have seen, Wade's intent, in and of itself, cut no figure in the case. In the absence of any act on the part of Jones causing or provoking the shooting by Wade, it was wholly immaterial what Wade's intent was. As he did not know Jones at the time this conversation occurred, he could then have had no intent as to him. The evident intention, as to so much of this evidence as was introduced, as well as that which counsel proposed to introduce, but never offered, was to show that there was no quarrel between Wade and Jones preceding the fatal shot; that Wade was the aggressor. Defendant's counsel asked the court to instruct the jury regarding this testimony, but did not prepare and present an instruction touching it.

Here was a case, however, where, under the circumstances, it would have been proper for the court, if not its duty, on its own motion, to have given a proper instruction to the jury, directing them to disregard this testimony. Whether, if such instruction had been given, it would have cured the error, we are not called upon to determine.

We think, also, that there are cases where a simple admonition, without more, to a jury, to disregard improper testimony, is ineffectual to cure the harm done.

It seems to us this is such a case. The statement of counsel as to what he expected to prove, and the testimony in fact adduced before the jury, were highly prejudicial to the defendant. Without referring to the books, it may be said that cases may be found in this and other courts wherein it has been held that an admonition to the jury by the court cures error in admitting improper testimony. It will serve no useful purpose to now review them. The facts touching such matters differ in each case, and it does not, therefore, follow that because an error in the admission of such testimony in one case may be cured by an admonition of the court, the same result must follow in every other case, where the error is of a graver character, the testimony more likely to mislead the jury, and to leave impressions upon their minds which must of necessity affect their judgment in the final consideration of the case, regardless of any admonition that the court might give them. Moreover, the statement of counsel—which was permitted to stand in the record, and before the jury, without any attempt to remove its damaging effect— that he proposed to show that Wade grabbed Jones by the watch chain, and grabbed for his money, with a drawn revolver—was highly prejudicial. No attempt was made to offer any competent evidence to establish the truth of any of these statements.

One of the main issues in the case was as to whether Jones, at the time of his death, was voluntarily engaged in a fight, whereby the liability of defendant upon the policy might be avoided. The character of this evidence was such that it is not unlikely that it may have turned the scale in favor of the plaintiff, notwithstanding the admonition of the court. However that may be, the proposal and the evidence were not only improper, but very prejudicial. We think it is a case where the error was not cured by admonishing the jury.

VIII.   Defendant asked instructions, which were refused, to the effect that plaintiff could not recover because the evidence showed that Jones received the mortal wound — *First*, in violation of law, in being in a house of ill fame for an immoral purpose, and carrying concealed weapons; *second*, while fighting and quarreling; *third*, by voluntary exposure to unnecessary danger.   It may be conceded that Jones visited the house of prostitution for an unlawful purpose; that he was carrying concealed weapons, in violation of law, but it does not appear that the injury he received was caused by any of these illegal acts.   It is not enough to defeat liability to show that the assured violated the conditions of the policy in these respects, but it must also be shown that such violation had a causative connection with the injury. The shooting was not, in a legal sense, caused by, or the result of, the assured's visit to the bawdyhouse— reprehensible as that act may have been—nor of his carrying concealed weapons in violation of law.   In other words, it does not appear that there was any such connection between the unlawful acts and the injury as would justify the contention that the former caused the latter.   If the injury was caused or produced by something else than the assured's violation of the law, then the latter can not be said to have such a legal relation to the former as to be a defense to the action upon the policy.   If the acts were in themselves unlawful, as they were, and the shooting might reasonably have been expected to have resulted from them, then the causative connection between the unlawful acts and the injury may be said to have been established. *Bradley v. Insurance Co.*, 45 N. Y. 422; *Bloom v. Insurance Co.*, 97 Ind. 478; *Griffin v. Association*, 20 Neb. 620, 31 N. W. Rep. 122; *Murray v. Insurance Co.*, 96 N. Y. 614; *Insurance Co. v. Bennett*, 16 S. W. Rep.

(Tenn.) 723. For the reasons above given, the instructions were properly refused.

IX. It is said that Jones was engaged in a fight which brought about the injury which caused his death, and hence plaintiff can not recover. Without entering into a discussion of the evidence, it may be said that there is nothing to show that the assured was engaged in a fight, or had given cause for the firing of the fatal shot. The evidence, on the contrary, tends strongly to show that the assured took no part in the controversy regarding the payment of the hackman, except to inquire how much he wanted. Mahr appears to have been the one who was opposing the payment of the hackman. Furthermore, the jury have specially found that Jones was not engaged in the fight in which he was shot. The evidence fully supports this . finding.

X. Did the court err in submitting to the jury the question as to whether the assured voluntarily exposed himself to unnecessary danger? Defendant relies upon the cases of *Insurance Co. v. Jones*, 7 S. E. Rep. (Ga.) 83, and *Shaffer v. Insurance Co.*, 22 N. E. Rep. (Ill.) 589. The facts in these cases are not such as to make them authority in support of defendant's claim in the case at bar. In the *Jones* case, the assured, while carrying two packages, attempted to pass over a trestle which he knew to be dangerous, and which was so considered by the public generally. The condition in the policy was, in substance, like that under consideration. It was held that the assured took an unnecessary hazard. In the *Shaffer* case the policy contained a like condition. The assured was in a room with a woman, and while there a policeman hammered upon the door and demanded admittance, which was refused. The assured procured a piece of selvage, and undertook to let himself down to the ground from a window. His selvage broke, and

he fell, sustaining injuries resulting in his death.    It will be observed that in both cases the assured proceeded to do an act voluntarily which was fraught with danger, and injury resulted therefrom.    In those cases the injury was what might have been reasonably expected to follow the act done.    Not so in the case at bar.    It can not be said that the shooting followed as a natural consequence of, or that it was the result of, or might reasonably have been expected to follow, going into the house of ill fame, or passing therefrom out upon the sidewalk on the street.    In *Miller v. Insurance Co.*, 21 S. W. Rep. (Tenn.) 43, it is said, "A degree of consciousness of danger is necessary before there would be that voluntary exposure to unnecessary danger required to prevent indemnity."    "The approach to an unknown and unexpected danger does not make the act a voluntary exposure thereto.    The result of the act does not necessarily determine the motive which prompted the action.    The act may be voluntary, yet the exposure involuntary."    *Burkhard v. Insurance Co.*, 102 Pa. St. 262; *Insurance Co. v. Osborn*, 9 So. Rep. (Ala.) 869.    It is not sufficient to relieve the defendant from liability that the acts of the assured in going into the house of ill fame, and in thereafter going upon the street as he did, were unnecessary.    It must also appear that these acts were such as reasonable and ordinary prudence would pronounce dangerous, and that the death followed as a consequence thereof.    If it be conceded that the acts done by the assured in this case were unnecessary, it can not be said that they were of such a character as that the danger was obvious, or the result such as might have been reasonably expected to follow the acts done.    *Tuttle v. Insurance Co.*, 134 Mass. 175; *Insurance Co. v. Jones*, 80 Ga. 541, 7 S. E. Rep. 83.

XI.   It is insisted that the injury was caused by or the result of intoxication of the assured.   The jury specially found that the assured was not under the influence of intoxicating liquors on the night he was shot.   Defendant contends that this finding is contrary to, and not supported by, the evidence.   As to that matter the evidence was conflicting.   It was the province of the jury to weigh the evidence, and we can not disturb the judgment if the evidence sustains the finding.   That it was ample to warrant the finding, we have no doubt.

XII.   There was no error in refusing to submit to the jury the special interrogatories asked.   They did not call for ultimate facts.   Other errors are assigned and argued, but the length of this opinion precludes our considering them in detail.   We have examined the record, and discover no error, except as to the matters discussed in the seventh division of the opinion, and for the reasons therein given, the judgment below is REVERSED.