94  435
115  220

94  435
119  174
119  344
e119  345

94  435
124  656

94  435
e133  233

94  435
139  43
139  449

# MARY A. FOLLIS v. THE UNITED STATES MUTUAL ACCIDENT ASSOCIATION, Appellant.

**Policy: Construction: EVIDENCE.** A policy stipulated for non-liability if assured voluntarily exposed himself to danger. *Held,* a case where a man, in his right mind, attempts, on a dark night, to walk across a railroad trestle without railing and built of ties ten inches apart, is such voluntary exposure as matter of law.

**Semble.** It is not voluntary exposure *as matter of law* to cross a trestle much used by the public, and having a plank walk and a rail.

**BURDEN OF PROOF.** Where a policy by its terms excludes payment for death caused in a given mode the insurer must show that death was due to the excepted cause.

**Practice: BURDEN OF PROOF: CONSTRUCTION.** A policy in a mutual association stipulated to pay a stated sum in case of death "and that the payment of the various sums of indemnity herein provided is conditioned pursuant to Chapter 175 of the law of New York upon the same being realized from assessments (premium calls) upon the member." There was no evidence what the New York statute provided. The by-laws provide for an assessment to be made to pay losses *in the event of there being no funds at hand to meet them. Held,* beneficiary may sue at law to recover the amount of the policy, need not allege or prove funds in the treasury, that an assessment was levied to pay the claim, or compel the levy of an assessment by filing bill. *Bailey v. Ass'n,* 71 Iowa, 690, *distinguished.*

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

SATURDAY, APRIL 6, 1895.

On the nineteenth day of November, 1892, the dead body of William Follis was found underneath a railway bridge in Sioux City, Iowa, across Perry creek. The body was lying face down in the water, and had evidently fallen or was thrown from the bridge. Deceased held a policy of accident insurance in the

defendant company; his wife, the appellee herein, being the beneficiary named therein. This action was brought to recover five thousand dollars,—the amount agreed to be paid in case of death. The defense was — *First*, that no action would lie to recover a money judg-ment; *second*, that deceased was intoxicated when he met with the accident which caused his death; and, *third*, that death resulted because the deceased volun-tarily exposed himself to unnecessary danger. The case was tried to a jury, and a verdict and judgment were rendered for plaintiff, and defendant appeals.— *Reversed.*

*Kennedy & Kennedy* and *Peet, Smith & Murray* for appellant.

*T. F. Griffin* and *Lynn, Sullivan & Foley* for appel-lee.

Deemer, J.—The policy in suit provides that "if death shall result from such injuries [external, violent, and accidental] alone, and within ninety days, the association will pay five thousand dollars to Mary A. Follis [his wife]. * * *" Among other conditions appearing upon it is this: "The payment of the various sums of indemnity herein provided is conditioned, pursuant to chapter 175 of the Laws of 1883 of State of New York, upon the same being realized from assessments (premium calls) upon the members of the association. Payment in case of loss of one or both hands, feet, or eyes, or for permanent total disability, shall immediately terminate member-ship and this insurance." We are not advised as to what is contained in chapter 175 of the Laws of 1883 of the State of New York. The by-laws of the defend-ant company provide for an assessment to be made by

the company to pay losses in the event of there being no funds at hand with which to meet them. It is insisted on behalf of appellant that the promise to pay in this case is conditional upon the same being realized from assessments upon the members of the association, and that as there is neither allegation nor proof of any funds in the treasury of the company, nor of any assessment having been levied or moneys realized to pay the claim, plaintiff cannot recover more than nominal damages; her remedy being in equity, to compel the levy of an assessment. Counsel cite, to sustain them, *Bailey v. Association*, 71 Iowa, 690, and kindred cases. These cases are not applicable, for the reason that in each of them the obligation of the company was to pay the net proceeds of an assessment, not to exceed the amount called for by the certificate, to the beneficiary. Here the promise is to pay a definite amount, which is in no manner dependent upon or limited by the assessment. True, an assessment is provided for, but this is simply the method the company, which is a mutual one, has of securing the fund. The case is more nearly like *Harl v. Insurance Co.*, 74 Iowa, 39. See, also, *Association v. Barry*, 131 U. S. 100, 9 Sup. Ct. Rep. 755; Bacon, Ben. Soc. section 453; Niblack, Mut. Ben. Soc. sections 384-386. We think the action was properly brought at law.

II. One of the conditions of the policy is that it does not cover or extend to accidental injuries or death happening while the insured is under the influence of intoxicating liquors, or in consequence thereof. It is insisted that the evidence shows that the deceased was under the influence of intoxicating liquor when he received the injuries which caused his death, and that he walked off the railway bridge in consequence of his being intoxicated. There was a sharp conflict in the evidence on this question, and it was submitted to the

jury under proper instructions. The jury found that the insured was not intoxicated, and with this finding we cannot interfere.

III. Another condition of the policy is that it shall not extend to or cover death caused directly or indirectly, wholly or in part, by voluntary exposure to unnecessary danger. It is contended that deceased went upon the bridge, which was private property of the railway company, on a dark night, knowing it to be a dangerous place, and that he fell therefrom, struck his head so that he was stunned, and, falling into the water of the creek, was suffocated and drowned before he regained consciousness. The evidence shows that the bridge underneath which the deceased was found is an ordinary pile trestle-work railroad bridge, about fifteen feet high and something like one hundred and fifty feet long and thirty feet in breadth. The creek which it spans is from fifteen to twenty feet wide. On the north side of the bridge is a walk built originally as a sort of platform on which passengers from the trains might alight. This platform or walk is about five feet wide, and extends the entire length of the bridge. On the north side of the walk is a fence railing to prevent pedestrians from falling off. South of the walk are the two railway tracks, and between them a narrow plank for the railroad employes to walk upon. From the south rail to the end of the ties on the bridge is about ten or eleven feet. The ties here are about ten inches apart, and they are uncovered. On the south side, at the extreme west end, there is a little platform, about twelve feet long, for switchmen to stand upon. It has a fence around it, so that employes would not walk off it at night. There was no approach to this platform from the east end, and the ties were open to the east and north of it. The

north side of the bridge was extensively used by foot-
men who desired to cross the creek. Follis was last
seen about 9 o'clock in the evening of the day before
his body was found in the creek. His condition is a
matter of some dispute, but it is evident that about
this time he started to his home, which was across the
creek from the place where he was last seen, and that
while crossing the bridge he in some manner fell there-
from, and received the injuries which resulted in his
death. The body was found near the west end of the
bridge, and almost directly under the south end of the
ties. The money and other valuables he had on his
person were not disturbed. There was quite a large
cut or bruise on the forehead, and it is supposed he
received this wound in his face from the bridge. The
question then is, does it appear from these facts that
the deceased met his death while voluntarily exposing
himself to unnecessary danger? It is well to notice
that the clause of the policy quoted does not cover vol-
untary exposure to necessary danger, or involuntary
exposure to unnecessary danger, and it evidently means
something more than contributory negligence or the
want of ordinary care on the part of the assured. The
policy was no doubt intended to cover accidents,
although the insured may have been guilty of negli-
gence which proximately contributed to his injury.
To render one guilty of a voluntary exposure to danger,
he must have intentionally done some act which rea-
sonable and ordinary prudence would pronounce
dangerous. The burden was upon the defend-
ant to show that the deceased received his
injuries while or because of his voluntary exposure to
unnecessary danger. *Jones v. Association*, 92 Iowa, 654,
61 N. W. Rep. 485; *Freeman v. Insurance Co.* (Mass.) 12 N.
E. Rep. 372. It is shown by the testimony that the bridge
in question was much frequented by foot passengers, and

it appears to us that the north side was reasonably safe for use as a bridge over the creek which it spans. Indeed, in the condition it was in, it was as safe as any ordinary bridge, except that it had no guard rail on the south side. We do not think it should be held, as a matter of law, that the deceased exposed himself to danger by taking the bridge in going to his home. Moreover, it is not shown that there was any other bridge by which he might have crossed the creek. There is nothing in the record to show that the exposure, whatever it may have been, was not necessary. The jury was justified in finding that deceased was not unnecessarily exposing himself to danger in attempting to cross the bridge. It is insisted, however, that the insured must have attempted to walk across the bridge on the ties on the south side, where there was no walk or planking, and that in so doing he brought himself within the condition of the policy relied upon. It seems to us this conclusion is inevitable. That he fell from the south side of the bridge, and at a point at least twenty-five feet from the nearest end, must be conceded. That it is dangerous to attempt to cross a bridge fifteen feet high, upon ties from ten to twelve inches apart, on a dark night, is a proposition so plain as to be indisputable. And, while it may have been necessary for the deceased to use the bridge to reach his house, it was entirely unnecessary for him to attempt to cross it where there was no walk or planking of any kind. It cannot well be said that he did not know he was upon the ties, and not upon the walk, and that the danger was unknown to him, for he had passed on to the bridge at least twenty-five feet, and must have known he was upon the ties. The jury found that the insured was not intoxicated, and his choice of walk must then have been voluntary. If it can be said that a presumption exists that he did not

voluntarily put his life in jeopardy, because of the known instincts which prompt every one to preserve his own life, yet, as against this, we have the presumption, aided to some extent by the finding of the jury, that the deceased was in his right mind, and was capable of controlling his actions and directing his course. His act, then, is presumed to have been voluntary; and, from the other circumstances in the case, it is clear that he must have been walking in a dangerous place when he met with the accident. It seems to us that there is no escape from the conclusion that the assured was voluntarily exposing himself to unnecessary danger, in attempting to cross the bridge, on the south side, at the time he did. The danger was plain, the exposure to it unnecessary and voluntary, and death resulted in consequence thereof. *Tuttle v. Insurance Co.*, 134 Mass. 175; *Insurance Co. v. Jones* (Ga.) 7 S. E. Rep. 83; *Shaffer v. Insurance Co.*, (Ill. Sup.) 22 N. E. Rep. 589; *Williams v. Association* (N. Y. App.) 31 N. E. Rep. 223; *Lovell v. Insurance Co.*, 5 Ins. Law J. 559, 3 Ins. Law J. 877. There should have been a verdict for defendant, on the evidence adduced.—*Reversed*.