# Fidelity & Casualty Co. v. Hannah M. Sittig.

1. Voluntary Exposure—*To Unnecessary Danger Defined.*—Voluntary exposure to danger implies something more than an act of mere volition. One may do a voluntary act which is dangerous without consciousness that he is incurring a serious risk. To constitute voluntary exposure to danger, appreciation of the danger must exist coincident with the act by which exposure is incurred. If at the time when, by his volition, one puts himself in danger, his attention is so engrossed with other considerations that for the time being he is blind to the existence and extent of the danger, then while his act is voluntary his exposure to the danger may not be, because he is ignorant of its existence.

Assumpsit, upon a policy of accident insurance. Appeal from the Superior Court of Cook County; the Hon. Joseph E. Gary, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1898. Affirmed. Mr. Justice Horton dissenting. Opinion filed December 23, 1898.

This was a suit to recover upon a policy of accident insurance. The insured was killed while attempting to board a suburban train on the Illinois Central Railway. The evidence tends to show that he reached the neighborhood of

the steps of the station platform just after the train had started; that he threw his valise on the platform of the car, seized the railing and attempted to climb on, but either lost his hold and fell after being carried some distance, or else was knocked off and killed by coming in contact with a small building used as a ticket office which stood very near the track, and distant about one hundred and forty or fifty feet from the station platform.

The policy contains a clause providing that the insurance should not cover "voluntary exposure to unnecessary danger." There was a verdict and judgment for the beneficiary from which the company appeals.

JOHN A. POST and JOHN B. BRADY, attorneys for appellant.

THORNTON & CHANCELLOR, attorneys for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

Voluntary exposure to danger implies something more than an act of mere volition. One may do a voluntary act which is dangerous without consciousness that he is thereby incurring serious risk. To constitute voluntary exposure to danger, appreciation of the danger must exist coincident with the voluntary act by which exposure is incurred. If at the time when by his own volition one puts himself in danger, his attention is so engrossed with other considerations that for the time being he is blind to the existence, nature and extent of the danger, then, while his act is voluntary, his exposure to the danger may not be, because for the moment he is ignorant of its existence.

It is common observation that brakemen and conductors are frequently in the habit of boarding their trains when the latter have begun to move. Long practice and experience have given them a facility in so doing, which removes from their minds the apprehension of danger. The danger exists, because accidents may and do occur from boarding trains in motion, but for an experienced brakeman or con-

Fidelity & Casualty Co. v. Sittig.

ductor the act may not be voluntary exposure to danger, because to the mind of such a man no danger is involved.

A steamer started from Chicago to cross Lake Michigan on a stormy winter night. She was overwhelmed by the heavy seas, crushed in the floating ice, and all on board were lost. A passenger who thus lost his life could have reached his destination by rail within three hours with entire safety. He could have made the trip in a shorter time than the steamer would cross under ordinary conditions, and safe from storm and ice and wave. He chose the lake instead. The act of exposure was voluntary, the danger unnecessary. Was it " voluntary exposure to unnecessary danger " which would preclude recovery under a policy such as that under consideration? Clearly not. The danger was not obvious to the passenger, nor probably to the officers and crew of the steamer, although the risk in such a storm with high seas and fields of floating ice was, as the event proved, very great. But if the apprehension of danger was not in the mind of such passenger, coincident with the voluntary act by which he exposed · himself to it, then the act was not a voluntary exposure to the danger.

If it be true in the case at bar that the deceased was killed by violent contact with the ticket office which stood close to the track, and was thus brought near the platform and steps of the moving cars to which he was clinging, and if this was a danger which he had not foreseen—of which he was ignorant—then he did not voluntarily expose himself thereto.

If, on the other hand, he was killed by falling, because of his failure or inability to secure a foothold upon the steps under the projecting platform upon which he was attempting to climb, it was a question of fact whether, taking into consideration the speed of the train, the height of the platform and all the circumstances, he had or had not reasonable cause to apprehend danger of such failure when he undertook to board the train in motion; and understanding, or having reasonable cause to understand that there was danger, voluntarily or intentionally assumed it.

The jury have found, in answer to a request for a special finding at the instance of appellant, that the deceased did not voluntarily expose himself to unnecessary danger, and we can not say that such finding was not warranted by the evidence. The testimony was conflicting as to the speed of the train, whether he was injured by the ticket office or lost his hold and fell. There is evidence to the effect that his neck and left jaw were broken. He fell immediately after passing the ticket office, outside of and parallel to the rails of the track, with his head to the south, in which direction the train was moving. In that position, the fingers of his left hand and the heel of his left foot were injured by the car wheels. There was evidence from which the jury might properly conclude that he was killed by contact with the ticket office, and that this was a danger of which, under the circumstances, he was ignorant, and which he did not apprehend.

In Burkhard v. Travelers Ins. Co., 102 Penn. State, 262, 267, the court says : " A clear distinction exists between a voluntary act and a voluntary exposure to danger. Hidden danger may exist, yet the exposure thereto, without any knowledge of the danger, does not constitute a *voluntary* exposure to it. The approach to an unknown and unexpected danger does not make the act a voluntary exposure thereto. The result of the act does not necessarily determine the motive which prompted the action. The act may be voluntary, yet the exposure involuntary. The danger being unknown, the injury is accidental."

In cases cited by appellant's counsel, the clause in the policies in controversy differs materially from that in question here. In the case of Smith v. Preferred Mutual Accident Association, 62 N. W. 990, the policy was to be void if the accident occurred "from either voluntary or unnecessary exposure to danger or to *obvious risk* of injury." In Williams v. U. S. Mutual Accident Association, 31 N. E. 222, the court said that under the facts " the theory of accident is excluded." In Tuttle v. Travelers Ins. Co., 134 Mass. 175, the language of the policy was, " exposure to any *obvious* or unnecessary danger," and the insured was " required to

use all due diligence for personal safety and protection;" the court held that deceased had violated both of these provisions.

In Travelers Ins. Co. v. Jones, 80 Ga. 541, the clause involved was "voluntary exposure to unnecessary danger, hazard or perilous adventure," and the evidence showed that the insured was injured by falling through a railroad trestle on a dark and rainy night, at a place which he knew was dangerous, when there were other ways for him to go.

In Bean v. Employers' Liability Ass'n Corp., 50 Mo. App. 459, the insured was attempting to pass over the drawheads or bumpers of two freight cars standing at a crossing, and while so doing the train moved and his foot was crushed. He could have gone around, and had waited some fifteen minutes for the train to pass before trying to cross over. The court said that the evidence showed the danger to be obvious, the insured grossly negligent, the act voluntary, intentional and deliberate, one which "reasonable and ordinary prudence would pronounce dangerous."

In Sawtelle v. The Railway Pass. Ass'n Co., 15 Blatchford, 216, the clause in question included "hazard or perilous adventure" and "standing, riding or being upon the platform of moving railway coaches." The assured was killed by falling from the platform of a moving car at night.

The purpose and object of the policy under consideration was, according to its terms, to insure "against bodily injuries sustained through external, violent and accidental means." The death of the insured was thus occasioned.

In National Benefit Ass'n v. Jackson, 114 Ill. 533, it was held that deceased, having been killed while in the discharge of his regular duty as yard switchman, his death was not caused by "voluntary exposure to unnecessary danger." The court said that death resulted "from an accident for which the contracting parties intended the association should be liable."

The judgment of the Superior Court is affirmed.

Mr. Justice Horton: I can not concur in this opinion.